[S. F. No. 842.   Department Two.—January 12, 1899.]

JOHN C. WILSON, Appellant, v. O. L. HENDERSON et al., Respondents.

INSOLVENCY—AGREEMENT OF CREDITORS TO CARRY ON BUSINESS—AGENCY OF ASSIGNEE—ASSUMPSIT.—A mutual written agreement of the creditors of an insolvent corporation authorizing and directing the assignee for his, their and each of their joint and several interest and advantage to carry on the usual business of the corporation, and authorizing, empowering and directing him to employ the necessary labor and buy the necessary supplies for that purpose, creates an agency of the assignee for such creditors as joint principals, who are liable as such to an action of assumpsit for supplies sold to the assignees on faith thereof.

ID.—PARTNERSHIP NOT INVOLVED.—Such agreement does not involve any question of partnership or sharing of profits among the creditors, or of engaging in business on their part. The question is simply one of agency, and of the liability of principals for acts done by their authority.

ID.—PLEADING—AGENCY FOR CREDITORS—ORDER OF COURT—LIEN UPON ASSETS.—In an action of assumpsit against the creditors as principals, for supplies furnished to the assignee as their agent, where the complaint specifically alleged that they were furnished under and in pursuance of the authority conferred upon the assignee by the terms of the agreement of the creditors, an allegation in the complaint that the defendants obtained an order of court authorizing the assignee to carry on the business, and directing that the costs of labor and supplies should be a first charge upon the assets, without alleging that the supplies were furnished upon the authority of the order, does not show upon its face that the order is available to defeat the cause of action pleaded, or to relieve the creditors from

their liabiity as principals, under the agreement, and to cast the whole liability upon the assignee.

ID.—CONSENT TO ORDER—DEFENSIVE MATTER—EXHAUSTION OF LIEN.— The contention that plaintiff consented to be bound by the terms of the order, in seeking payment for his supplies, is affirmative matter of defense; and the utmost that could be claimed under such defense, from the terms of the order, would be, that having been given a preferred claim in the nature of a lien upon the assets of the insolvent, he ought to exhaust such lien before seeking recourse against the creditors.

ID.—POWERS OF ASSIGNEE — CONTINUANCE OF BUSINESS — INEFFECTIVE ORDER—ESTOPPEL.—The assignee has no power under the Insolvent Act to continue the business of the insolvent, and there is no authority given in the Insolvent Act to the court to order that the business shall be carried on; and such order cannot operate merely by force of its terms, or be enforced otherwise than upon the equitable principles of estoppel.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. D. J. Murphy, Judge. A. J. Buckley, Judge in insolvency proceeding.

The facts are stated in the opinion of the court.

G. R. Lukens, and John A. Wright, for Appellant.

Stearns & Elliott, for California Electrical Works *et al.*, Respondents.

Hilborn & Hall, and F. W. Hall, for Piper, Aden & Co. *et al.*, Respondents.

Joseph Kirk, for Whittier, Fuller & Co. *et al.*, Respondents.

J. T. Langhorne, for Oregon Coal and Navigation Company, Respondent.

E. J. McCutchen, for Black Diamond Coal Mining Company *et al.*, Respondents.

Edward R. Taylor, for Risdon Iron Works, Respondents.

A. Heyneman, for Vallejo Water Company, Respondent.

Wal. J. Tuska, for J. A. Roebling & Sons, Respondents.

Page & Eells, for General Electric Company, Respondent.

Earll H. Webb, for Joan O. Dunsmuir, Respondent.

George A. Rankin, for Henry L. Tatum and J. Joseph Bowen, Respondents.

HENSHAW, J.—Plaintiff, for cause of action, alleged that the defendant the Vallejo Electric Light and Power Company was an insolvent debtor, and that the defendant O. L. Henderson was its assignee. All of the other defendants, thirty or more in number, were creditors of the insolvent corporation, and entitled to share ratably in the distribution of its property and assets. On the twenty-fourth day of July, 1893, all of the defendants entered into a mutual agreement that it would be to their joint and several interests that the plant and business of the insolvent should not be shut down, but should be operated and maintained as it had before the corporation's insolvency. Defendants thereupon "authorized and directed the said O. L. Henderson, for his, their, and each of their joint and several benefit and advantage, to carry on, maintain, operate, and run said plant in all respects as it should be run . . . . and further authorized and empowered and directed him to employ the necessary labor for said purpose and to buy the necessary supplies for said purpose." Following this authorization, it is next alleged that the defendants applied for and obtained an order of the insolvency court, in which order the court found that it was for the best interest of all concerned that the plant of the corporation should be kept in operation, and that the creditors consented thereto, and by which order it was declared that Henderson, the assignee, "shall have power and it shall be his duty to employ the necessary labor for said purpose and to buy the necessary supplies for said purpose, and the costs of the same shall be paid out of the assets of said estate of said insolvent in preference to any other claim."

Afterward defendant Henderson, "acting on his own behalf and as agent for the other defendants under and in pursuance of the power and authority conferred upon him according to the terms of the agreement made as aforesaid, and for the purpose of carrying out the objects of the same, and none other," took from plaintiff and plaintiff sold and delivered to him certain supplies necessary for the purposes of the agreement and

for the conduct of the business. For the unpaid part of the purchase price of these supplies judgment was demanded against all of the defendants, who were each and all sued in their individual capacities.

To this complaint pleas by demurrer were presented, and the demurrers were sustained. Plaintiff declining to amend, judgment was entered for certain of the defendants, and plaintiff appeals. There were many special grounds of objection raised by the demurrers of the different defendants, but every one tendered the issue of law that the complaint did not state facts sufficient to constitute a cause of action. While some of the special grounds of demurrer have been adverted to in the briefs, none has been argued, and, upon consideration of them, we do not think that any one of them was well taken. The general ground of demurrer is the only one which has received attention from counsel, and is the only one which, therefore, need be considered here.

As to the special grounds of demurrer, suffice it to say that the complaint is sufficiently unambiguous, intelligible, and certain, and that, as will hereafter be considered, the defendants being all sued as joint principals, there is no misjoinder of parties defendant, and there is no objection to impleading the insolvent corporation under the allegation here made that it was one of the principals to the contract.

In support of the judgment and of their argument that the complaint does not state facts sufficient to constitute a cause of action, respondents urge that the defendants, if liable at all, are liable only as partners, and that the facts pleaded show neither an actual partnership nor such a holding out to plaintiff as would estop defendants from denying a partnership liability. Again, they insist that it appears that the proceedings of the defendants ended in the order of court set out in the complaint, and that plaintiff must be held to have dealt upon the security of this order alone, in which event he would have no right to a personal judgment against any of the defendants, but merely a right to a preferred lien or claim upon the assets of the insolvent; or, at the most, if personal liability attached, it would be to the assignee only, and the creditors and insolvent could not, therefore, be held by this proceeding.

In the view which we take of the complaint, the question of partnership, actual or ostensible, becomes quite immaterial. The pleading sufficiently charges that the defendants, for their mutual interest and advantage, as joint principals, employed a common agent to conduct a certain business; that as such agent, and acting within the scope of his authority, he purchased upon behalf of the joint principals certain supplies of coal at an agreed price; that a part of this purchase price has not been paid, and that there is due and owing to plaintiff from defendants on account of this purchase a certain sum of money. The facts thus pleaded are certainly sufficient as a declaration in assumpsit, and state a cause of action against the defendants as joint principals. Under such a pleading no question of partnership, of sharing in profits, or engaging in business, need be considered. It is sufficient if the defendants have agreed, and by agreement have authorized their common agent to do certain things, and to incur liability in so doing. They become responsible for his acts within the scope of his authority. "It cannot be too carefully borne in mind," says Mr. Justice Lindley, "in all cases of this description that a person who is neither a partner nor a *quasi* partner is liable on the general principles of agency for acts done by others with his authority express or implied. If, therefore, directors, members of committees, managers of clubs, or any other persons not in partnership, pass resolutions that work shall be done or goods supplied, they authorize whatever may be done in pursuance of such resolutions, and they are the persons naturally looked to and *prima facie* liable to pay for what may be done. The question in these cases is simply one of agency, and the question of partnership or no partnership is immaterial." (1 Lindley on Partnership, *45.)

Were these facts to which we have last adverted, and these only, pleaded in the complaint, it would require some boldness to contend that a cause of action was not stated, but it is argued that the effect of these averments is modified, and indeed nullified, by the further allegations showing that the defendants obtained an order of the insolvency court declaring it to be to the best interests of the insolvent and of its creditors that the business should be continued, and instructing the assignee so to do. But for this order to avail respondents, it must appear that it

supplanted the agreement, and that plaintiff contracted and furnished supplies upon its authority alone. This, however, plaintiff does not plead, nor is any such deduction fairly to be drawn from the complaint. To the contrary, the specific allegation is that Henderson purchased coal "under and in pursuance of the authority conferred upon him according to the terms of the agreement made as aforesaid." An order of court is not an agreement between parties. If the contention is that plaintiff consented to be bound by the order in seeking payment for his supplies, it may at once be answered that this is affirmative matter of defense, and that the utmost that could be claimed in this regard from the language of the order itself is not that plaintiff may not recover a personal judgment against defendants, but that he is given a preferred claim in the nature of a lien against the assets of the insolvent, which he ought to exhaust before personal recourse against defendants is sought. As for the order, it cannot be seen that it otherwise exerts any protective force in favor of defendants against plaintiff's action. It attempts to authorize the assignee to carry on the business of the insolvent corporation, but we have been unable to discover any authority in the Insolvent Act for so doing, and we have not been referred to any. The powers of the assignee in insolvency are expressly defined (Insolvent Act, sec. 21), and this power of continuing the business of the insolvent is not included among them. To the contrary, the act contemplates and declares—indeed, it is its main purpose—that the insolvent's estate shall be converted into money as speedily as possible (Insolvent Act, sec. 25), and ratably distributed amongst the creditors. (Insolvent Act, sec. 31.) To speculate with the assets by continuing the business is certainly foreign to these purposes. It may be, though upon this no expression of opinion is given, that the order would protect the assignee against any future demands of the consenting creditors. But this would result, not from the force of the order itself, but from the equitable principles of estoppel. But certainly the order would not avail to defeat the cause of action which plaintiff here pleads, nor to relieve the creditors, and cast the whole liability upon the assignee.

The judgment is therefore reversed, and the cause remanded,

with directions to the trial court to overrule the demurrers of the defendants from the judgments in whose favor this appeal is prosecuted.

McFarland, J., and Temple, J., concurred.